HARDER MIRELL & ABRAMS LLP
CHARLES J. HARDER (State Bar No. 184593)
KATHLEEN EAGAN MURRAY (State Bar No. 276185)
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA  90067
Telephone:  (424) 203-1600
Facsimile:   (424) 203-1601
Email:            CHarder@HMAfirm.com
                    KMurray@HMAfirm.com

Attorneys for Defendant
REESE WITHERSPOON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARYLAND CASUALTY COMPANY, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>REESE WITHERSPOON, an individual; MARKETING ADVANTAGES INTERNATIONAL, INC. d/b/a Emitations.com; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. CV 13-7847 RSWL (SSx)<br><br>Assigned for all purposes to the Hon. Ronald S.W. Lew, Courtroom 21<br><br>**DEFENDANT REESE WITHERSPOON'S OPPOSITION TO *EX PARTE* APPLICATION OF PLAINTIFF MARYLAND CASUALTY COMPANY**<br><br>Action Filed:   October 23, 2013<br>Trial Date:      Not set |

Defendant Reese Witherspoon ("Ms. Witherspoon" or "Defendant") opposes the *ex parte* application filed by Plaintiff Maryland Casualty Company ("Maryland Casualty" or "Plaintiff").  The change to the briefing schedule and hearing date proposed by Maryland Casualty would be prejudicial to Ms. Witherspoon and no good cause exists for the relief requested, as discussed below.  In particular, the holiday travel schedule of Ms. Witherspoon's two attorneys and their subsequent trial schedule in January simply do not allow the scheduling accommodation requested by Maryland Casualty's counsel.

-1-

### A. Introduction

*Ex parte* motions are rarely justified. *Mission Power Engineering Co. v. Continental Casualty Co.,* 883 F.Supp. 488, 490 (C.D. Cal. 1995). As lamented more than 20 years ago, "Ex parte applications have reached epidemic proportions in the Central District of California." *In re Intermagnetics America, Inc.,* 101 B.R. 191 (C.D. Cal. 1989). "Since then the abusive use of ex parte motions has worsened." *Mission Power*, 883 F.Supp. at 489. "The passage of time has demonstrated that some things have not improved." *Dang v. Cross*, CV 00-13001-GAF, 2002 WL 826604 (C.D. Cal. Apr. 10, 2002). As described evocatively by the *Mission Power* court, "Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' **There had better be a fire.**" *Mission Power*, 883 F.Supp. at 491 (emphasis added).

There is no good cause for entering the relief requested by Maryland Casualty because there is no crisis pending; in other words, there is no "fire." *Mission Power,* 883 F.Supp. at 491-92.

Ms. Witherspoon's Motion to Dismiss or Stay the Action ("the Motion") was filed in accordance with the Federal Rules, the Local Rules and this Court's hearing schedule. Four attorneys from the national law firm employed by Maryland Casualty are involved in this case. The vacation schedule of one of those four attorneys, associate Brent Kramer, has overlapped by only a few days with the time period for Maryland Casualty to prepare its opposition to the Motion. This is neither a crisis nor a "fire" in any sense of the word.

Maryland Casualty has not stated that the other three attorneys working on this case on its behalf—Dean Herman, Tad Devlin or Steven Son—were unavailable at any time to work on the opposition; Mr. Kramer admits that he returned from vacation on December 15, and the opposition deadline is December 17, thus he personally had three days to work on the opposition in addition to the other

attorneys at his firm; and Maryland Casualty's law firm is a national firm with numerous attorneys located in seven different offices throughout the United States, including (according to the firm's website) at least 23 attorneys located in the Los Angeles office. Maryland Casualty is silent regarding why it is able to prepare a six-page *ex parte* application plus a four-page supporting declaration, but cannot prepare an opposition to the thirteen-page Motion during the time period prescribed by the Court's rules.

Maryland Casualty, in bringing this *ex parte* application, is asking that counsel for Ms. Witherspoon sacrifice *their* holiday vacations, so that Maryland Casualty's counsel is not inconvenienced. The two attorneys working on this case at Ms. Witherspoon's firm (partner Charles Harder and associate Kathleen Murray) both have vacation plans for December 25, 2013 through January 1, 2014, the time period during which their Reply brief would have to be drafted based on Maryland Casualty's requested briefing schedule.

Moreover, counsel for Ms. Witherspoon, partner Charles Harder, is scheduled to commence a two-week jury trial in Santa Barbara on January 17, 2014. Therefore, if the hearing on the Motion is re-scheduled, Ms. Witherspoon requests that the hearing not be scheduled for the weeks of January 13, 20, or 27, 2014, to accommodate for that trial. In addition, if any continuance of the hearing on the Motion is granted, Ms. Witherspoon requests that the instant action be stayed temporarily, including the Rule 26 procedures and the Court's February 4, 2014 scheduling conference, pending the Court's ruling on the Motion.

As the author of the Motion, Ms. Witherspoon is generally free to set her motion for any designated hearing date provided moving papers are served in compliance with applicable time limits. *See* Robert I. Weil and Ira A. Brown, Jr., Cal. Prac. Guide Fed. Civ. Proc. Before Trial, Ch. 12-B. Ms. Witherspoon's notice of the Motion has complied with all applicable time limits. As explained herein, these are the only dates that work for Ms. Witherspoon's counsel. Furthermore,

1  there is no good cause for entering the requested order because Ms. Witherspoon has
2  acted in good faith and has complied with Local Rule 7-3.

3       **B.**     **Factual Background**

4       On June 20, 2013, Ms. Witherspoon filed an underlying action in Los Angeles
5  Superior Court, Case No. SC120883 (the "Underlying Action"), after her name and
6  image were used extensively by numerous companies to sell jewelry products
7  without her permission. One of the defendants is Marketing Advantages
8  International, Inc. (the "Insured"), which is insured by Maryland Casualty.

9       On October 23, 2013, Maryland Casualty brought this action against Ms.
10 Witherspoon and its own Insured seeking declaratory relief only and claiming—
11 notwithstanding clear policy terms to the contrary—that the policy it issued to the
12 Insured supposedly does not cover the claims in the Underlying Action. By doing
13 so, Maryland Casualty has sought to overwhelm Ms. Witherspoon and the Insured,
14 by forcing them to litigate two separate, simultaneous lawsuits, simply to resolve the
15 common issues of whether there is liability to Ms. Witherspoon and, if so, the
16 amount of damages and who is required to pay them.

17      On December 10, 2013, Ms. Witherspoon filed the Motion, setting forth good
18 cause why this Court should either (1) decline jurisdiction due to Maryland
19 Casualty's forum shopping and the resulting duplicative litigation, or (2) stay the
20 action pending resolution of the Underlying Action due to the overlapping factual
21 issues present in the two cases and the prejudice that would result from inconsistent
22 rulings and the depletion of resources in fighting a two-front war.

23      **C.**     **No Good Cause Exists for Granting Maryland Casualty's *Ex Parte***
24             **Application**

25           **1.**     **Prejudice to Ms. Witherspoon Would Result If the *Ex Parte***
26                **Relief Is Granted**

27     In selecting the date to file the Motion, Ms. Witherspoon's counsel had a
28 number of considerations in mind, none of which involve bad faith or any intent to

harass Maryland Casualty or its counsel:

- The Scheduling Conference for this case has been set for February 4, 2014, with January 21, 2014 as the deadline for Initial Disclosures and the Rule 26(f) conference.  Because Ms. Witherspoon maintains that this lawsuit has been initiated for improper purposes, she has a strong interest in the Court ruling on the Motion before the commencement of discovery.
- This year the Christmas and New Year's holidays fall over Tuesday and Wednesday, the dates that this Court typically hears motions.  Therefore, Ms. Witherspoon was unable to notice her motion for December 2013.
- The next available hearing date after the holidays, January 7, 2014, was selected by Ms. Witherspoon in part because that date would allow her to file a Reply brief before December 24, 2013, to allow Ms. Murray and Mr. Harder to honor their holiday travel obligations between Christmas and New Year's.
- Mr. Harder's trial schedule during the weeks of January 13, 20, and 27, 2014 makes it extremely difficult, if not impossible, for counsel to attend the hearing on the Motion during these three weeks.

For the reasons discussed above, the hearing date and briefing schedule proposed by Maryland Casualty would be prejudicial to Ms. Witherspoon.

### 2. Ms. Witherspoon Should Not Be Prejudiced by Maryland Casualty's Counsel's Refusal to Comply with Local Rule 7-3

Maryland Casualty's counsel does not and cannot dispute that counsel for Ms. Witherspoon **repeatedly** requested their availability to meet and confer on the contents of the Motion prior to filing it.  The first and only time that Maryland Casualty's counsel ever provided a date and time for such a conference was when Maryland Casualty's counsel sought to use the Local Rule 7-3 conference as a bargaining chip—that is, Mr. Kramer would only participate in a Local Rule 7-3 conference if Ms. Witherspoon re-set the hearing date to January 14, 2014, which would force her counsel to work on the Reply during the entirety of their pre-

-5-

1  planned out-of-town vacations between Christmas and New Year's and would push
2  the hearing date to the eve of Mr. Harder's trial in Santa Barbara.  *See* Docket 17 at
3  30, Kramer Decl., Ex. 7.  The parties were not able to meet and confer in accordance
4  with Local Rule 7-3 prior to filing the Motion for the sole reason that Mr. Kramer
5  and the other three attorneys at his firm refused to participate in such a meeting or
6  conference until after the Motion had been filed and, even then, only if their
7  scheduling demands were agreed to—at the expense of the out-of-town vacation
8  schedules of Mr. Harder and Ms. Murray, as well as Mr. Harder's pre-trial schedule.

### D.    Conclusion

For the foregoing reasons, defendant Reese Witherspoon respectfully submits that the *ex parte* application is not a "crisis" that warrants this Court to drop everything to resolve, nor does good cause exist to support the application. Accordingly, the application should be denied.

Dated:  December 17. 2013          HARDER MIRELL & ABRAMS LLP

                                   By:  */s/ Charles J. Harder*
                                        CHARLES J. HARDER
                                        KATHLEEN EAGAN MURRAY
                                        Attorneys for Defendant
                                        REESE WITHERSPOON